UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GS HOLISTIC, LLC,

Plaintiff,

v.

SHREE GHANSHYAM INC., et al.,

Defendants.
_______________________________/

Case No. 1:24-cv-935

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff initiated this trademark infringement action against Defendants under the Lanham Act, 15 U.S.C. § 1051 et seq. Defendants answered Plaintiff's Complaint and filed a counterclaim, alleging a state-law claim for abuse of process, which Plaintiff now seeks to dismiss (ECF No. 22). For the following reasons, Plaintiff's motion to dismiss is properly granted.

## I. BACKGROUND

### A. Factual Allegations

1. Plaintiff's Complaint

Plaintiff G S Holistic, LLC, a Delaware corporation with its principal place of business in California, is the registered owner of the Stündenglass trademark (Complaint [ECF No. 1] ¶¶ 4, 13–14). Plaintiff alleges that since 2020, it has marketed and sold products using the well-known trademark Stündenglass, products such as gravity infuser waterpipes and related accessories (*id.* ¶¶ 10–12, 22). Plaintiff alleges that because of their higher sales value, Stündenglass branded products are targeted by counterfeiters (*id.* ¶ 24). For example, a Stündenglass brand gravity

infuser waterpipe is priced at retail at $599.95, while an inferior counterfeit non-Stündenglass gravity infuser waterpipe with the fake Stündenglass mark may be sold for as low as $199 (*id.* ¶ 23).

Plaintiff alleges that the marketplace in the United States is currently "saturated" with counterfeit Stündenglass products (*id.* ¶¶ 26–28). Plaintiff alleges that the sales of the counterfeit products result in lost profits and damages to Plaintiff, including irreparable harm to the Stündenglass brand's image (*id.*). According to Plaintiff, it has been "forced to scrupulously enforce its rights in order to protect the Stündenglass Marks against infringement" (*id.* ¶ 28). Specifically, Plaintiff alleges that at its own "great expense," it "seek[s] out and investigate[s] suspected counterfeiters" and "proactively and successfully police[s] the unauthorized use of the Stündenglass Marks and/or counterfeit Stündenglass branded products nationwide … to clean up the marketplace" (*id.*).

Defendant Amit Patel owns three retail businesses in West Michigan: Defendant Shree Ghanshyam, Inc. d/b/a West Side Smoke Shop 1; Defendant Bhaktinandan LLC d/b/a West Side Smoke Shop 3; and Defendant Shree Harikrushna Inc. d/b/a West Side Smoke Shop 5 (*id.* ¶¶ 5–7). Defendants sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices (*id.* ¶ 29). Plaintiff alleges that Defendants have offered for sale counterfeit Stündenglass products with the Stündenglass trademark, and Plaintiff specifically describes three purchases by its investigator in April 2023 (*id.* ¶¶ 24–25, 28, 30–49). Plaintiff alleges that Defendants' actions are willful and deliberately intended to "trade on the goodwill of the Stündenglass Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's gravity infuser waterpipes to West Side Smoke Shops" (*id.* ¶ 50).

2. Defendants' Counterclaim

According to Defendants, they purchased a limited number of gravity infusers from Greenlane Wholesale during the time frame of December 2020 to June 2021 (Counterclaim [ECF No. 20-7] ¶ 7). Among those items purchased were three of the allegedly counterfeit Stüdenglass gravity infusers (*id.* ¶ 8). Defendants allege that other than these three gravity infusers that it purchased from Greenlane Wholesale, they did not have other alleged counterfeit Stüdenglass gravity infusers for sale at the businesses or in their inventory (*id.* ¶ 11). Indeed, Defendants allege that the purportedly counterfeit Stüdenglass gravity infusers sat for sale on their store shelves for almost two years with no customer interest and that they did not order any more of the infusers from the vendor due to the lack of customer interest (*id.* ¶¶ 9, 12). Defendants allege that the only "customer" who purchased these allegedly counterfeit items was Plaintiff's investigator (*id.* ¶¶ 13–15).

Defendants allege that on or around October 4, 2023, Plaintiff, through its attorney, contacted Defendants and advised them of the allegedly counterfeit products that their investigator had purchased at two of Defendants' stores (*id.* ¶ 16). In the email sent that same day, the attorney stated the following:

> Pursuant to our conversation, I have included our initial offer to settle (per store found to have sold an infringing product):
>
> $12,500 paid within 10 days of signing an agreement,
> $15,000 (paid over 5 months), or
> $18,000 (paid over 12 months).
>
> As we discussed in our call, if you are interested in forming a business relationship with our client and provide[] us any information as to where you obtained the counterfeit products, including but not limited to wholesaler information and invoices, we would be happy to include $2,000 in credit for products provided by GS Holistic LLC.

(10/4/23 Email, Defs. Ex. 1 to Counterclaim [ECF No. 20-3]). According to Defendants, while they immediately agreed to cease and desist selling the allegedly counterfeit goods at their stores, they indicated in their response email on October 9, 2023 that Plaintiff's settlement "request is out of proportion for the unknowing 1 piece of counterfeit product" (10/9/23 Email, Defs. Ex. 2 to Counterclaim [ECF No. 20-4]). Defendants counteroffered an amount to settle (*id.*).

On October 19, 2023, Plaintiff's counsel sent another letter to Defendants regarding the April 2023 sales and indicated that his client was "preparing to file a lawsuit against you and your store … which we intend to file in the next two weeks… but before we go to that expense, I am extending an offer to settle this issue amicably. It is always easier for both sides before we go through the time and expense of filing and serving a lawsuit" (10/19/23 Notice, Defs. Ex. 3 to Counterclaim [ECF No. 20-5]).

Over one year later, on October 16, 2024, Plaintiff sent Defendants another letter about the April 2023 sales, noted that a lawsuit had been commenced, and encouraged Defendants to settle before they "incur unnecessary legal expenses" (10/16/24 Notice, Defs. Ex. 4 to Counterclaim [ECF No. 20-6]).

Defendants allege that Plaintiff has, to date, filed 973 lawsuits across the country, alleging the "*exact same recitation of facts and allegations*" against small smoke shop owners like Defendants (Countercl. ¶¶ 28–29, 33 [emphasis in original]). Defendants allege that Plaintiff often obtains a default judgment because the defendants do not appear or defend (*id.* ¶ 29). According to Defendants, "[f]or the defendants who do appear and defend, Plaintiff almost always accepts a settlement and the case is dismissed" (*id.* ¶ 30). Defendants "suspect that the Plaintiff itself planted these allegedly counterfeit items for sale in the stream of commerce in order to create these lawsuits to exact payment from unsuspecting defendants under the 'guise' of Plaintiff's rigorously

defending its intellectual property rights" (*id.* ¶ 31). Defendants emphasize that Plaintiff "knew where these allegedly counterfeit items had been sold, then Plaintiff sent its own investigator to 'purchase' these allegedly counterfeit items in order to extort money from small business owners like the Defendants" (*id.* ¶ 32).

Defendants allege that Plaintiff used the threat of litigation to coerce small business owners like them into selling Plaintiff's products at their stores by offering "merchandise credits" to offset the amount of money that Plaintiff demanded that it be paid in order to "settle" the cases outside of court (*id.* ¶ 34). "Rather than seeking compensation for the de minimus damages stemming from the purchase and resale of one to three of the allegedly infringing items by Defendants, the true purpose of this lawsuit was to coerce Defendants into purchasing the Plaintiff's products and selling these items at their stores or to exhort [sic] a high sum of money from Defendants to avoid a legal entanglement" (*id.* ¶ 39).

### B. Procedural Posture

In September 2024, Plaintiff initiated this action with the filing of a Complaint against Defendants, alleging trademark infringement and false designation of origin/unfair competition in violation of the Lanham Act under 15 U.S.C. §§ 1115 and 1125(a) (ECF No. 1). On December 12, 2024, Defendants filed an Answer to the Complaint (ECF No. 20) and a "Counterclaim for Abuse of Process" (ECF No. 20-7). Plaintiff subsequently filed this motion to dismiss the counterclaim (ECF No. 22). Defendants filed a response in opposition (ECF No. 26), and Plaintiff filed a reply to the response (ECF No. 27). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Under Federal Rule of Civil Procedure Rule 8(a), a pleader must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). The court must determine whether the pleader has provided "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a motion to dismiss a counterclaim for failure to state a claim, the court must "accept all well-pleaded factual allegations of the counterclaim as true and construe the counterclaim in the light most favorable to the claimant." *United Food & Com. Workers Union-Emp. Pension Fund v. Rubber Assocs., Inc.*, 812 F.3d 521, 524–25 (6th Cir. 2016) (citations omitted). The counterclaim must "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss for failure to state a claim, the court generally does not consider matters outside the pleadings, although the court may consider exhibits attached to the relevant pleading, so long as they are referred to therein and are central to the claims contained therein. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Specifically, with regard to the settlement negotiations attached to Defendants' Counterclaim, Federal Rule of Evidence 408 generally prohibits admission of evidence related to settlement negotiations, but this Rule "does not require exclusion if the evidence is offered for [another] purpose[ ].... [such as] proving a

witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution." *Arnold v. Wilder*, 657 F.3d 353, 366 (6th Cir. 2011). *See also Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360, 373 (6th Cir. 2020) ("Rule 408 explicitly permits courts to admit such statements for purposes other than to address the validity or amount of a claim.").

**B. Discussion**

Plaintiff argues that Defendants' Counterclaim for Abuse of Process is properly dismissed because (1) a claim for abuse of process cannot be based on actions prior to there being any process, (2) public policy requires that parties not be sued for making an effort to settle pending litigation, and (3) the mere filing of a complaint cannot form the basis for an abuse-of-process claim (ECF No. 23 at PageID.177–178, 180–183). Plaintiff opines that "[t]he fact that a settlement offer was made, whether it was for a specific demand of money damages, or a more complex arrangement for [Defendants] to identify the source of the counterfeit goods, the making a settlement demand is neither illegal nor improper, but in fact, serves the interests expressed, affirmatively, by the courts as proper including pursuit of efficient resolution and conservation of judicial resources" (*id.* at PageID.183–184).

In response, Defendants argue that they stated a plausible abuse-of-process claim where they alleged that Plaintiff's "ulterior" purpose all along was using litigation to gain market share (ECF No. 26-1 at PageID.204, citing Countercl. ¶ 38). Defendants argue that they also properly alleged that Plaintiff used the impermissible leverage of the cost of litigation and "a cut-and-paste complaint—identical to over 900 other cases that Plaintiff has filed all around the country against small retail owners like these Defendants—to gain an unfair advantage in the marketplace" (*id.* at PageID.203–204).

The parties in this case agree that to state a claim for abuse of process, a party must allege the following two elements: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular conduct or prosecution of the proceedings (ECF No. 23 at PageID.181; ECF No. 26-1 at PageID.201). *See generally Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981) (setting forth elements). *Cf. Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.") (citation omitted).

With regard to the first element, Michigan law provides that "the ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 237 (6th Cir. 2020) (citation omitted). Even if a pleading sufficiently alleges that the defendants had an ulterior purpose in causing process to issue, the pleader must also allege that the defendants committed some irregular act in the use of process, and "a summons and complaint are properly employed when used to institute a civil action." *Friedman v. Dozorc*, 312 N.W.2d 585, 595 (Mich. 1981). In other words, "the mere institution of a lawsuit is not enough to create a cause of action for abuse of process." *Peisner v. Detroit Free Press*, 242 N.W.2d 775, 778 (Mich. Ct. App. 1976).

Somewhat ironically, Plaintiff directs this Court's attention to another civil action that it initiated in which the district court, applying Ohio law, likewise dismissed the defendants' counterclaim for abuse of process (ECF No. 27 at PageID.213). The district court held that the

> [d]efendants have alleged nothing more than Plaintiff filing numerous cases and then making settlement demands that contain licensing agreements therein. (Doc. #6, PAGEID 35, ¶ 23). In other words, Plaintiff has done exactly what numerous civil litigants do every day in District Courts across the country, and its alleged conduct cannot be considered nefarious or tortious. Without more, Plaintiff cannot be liable for abuse of process, and the Court therefore dismisses Claim Two.

(*id.*, quoting *GS Holistic, LLC v. Wireless and Smoke, LLC*, No. 1:23-cv-00748, 2024 WL 4441736, at *5 (S.D. Ohio Oct. 8, 2024)).

In short, even if this case is part of a "nationwide shakedown" by Plaintiff, as the defendants in the Ohio case argued, that would not make an otherwise legitimate trademark lawsuit illegitimate. *See, e.g., Jaiyeola v. Bryan*, No. 23-1675, 2024 WL 3549163, at *2 (6th Cir. Feb. 12, 2024) ("Because Jaiyeola failed to allege facts showing that Bryan sought to achieve any collateral purpose beyond obtaining a favorable outcome for her client, the district court properly dismissed this claim."). Plaintiff is entitled to dismissal of Defendants' Counterclaim for Abuse of Process.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Counterclaim (ECF No. 22) is GRANTED.

Dated: May 19, 2025

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge